## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **Benjamin Washington** | : | |
| | : | |
| **Plaintiff,** | : | **No. 21-cv-276** |
| | : | |
| **v.** | : | |
| | : | **MARCH 8, 2022** |
| **CT Scoop Shops LLC,** | : | |
| **Olga Cherkasova, and** | : | |
| **Dmitriy Gorbunov** | : | |
| | : | |
| **Defendants.** | | |

### MEMORANDUM OF DECISION GRANTING IN PART AND DENYING IN PART DEFENDANTS' [51] MOTION TO STRIKE AND DISMISS

Plaintiff brings this action as a self-represented party alleging that his former employer, CT Scoop Shops, LLC and its owners—Olga Cherkasova and Dmitriy Gorbunov—violated Title VII and various state laws when he was terminated in June 2019. Plaintiff's complaint argues he was discriminated against on the basis of his religion and he was retaliated against after complaining about OSHA violations and questioned food labeling of products sold by CT Scoop Shops. Defendants have filed a motion to strike and motion to dismiss seeking to strike portions of Plaintiff's complaint and dismissing the complaint in full. [Mot., Dkt. 51]. Plaintiff opposes. [Opp., Dkt. 61]. For the following reasons, the Court DENIES Defendants' motion to strike and GRANTS Defendants' motion to dismiss.

### I.    BACKGROUND AND PROCEDURAL HISTORY

On March 3, 2021, Plaintiff filed a complaint against Defendants—CT Scoop Shops, LLC, Olga Cherkasova, and Dmitry Gorbunov—generally alleging he was wrongfully terminated "over a religious matter." [Compl., Dkt. 1]. On March 25,

2021, the Court struck Plaintiff's complaint under Rule 11 of the Federal Rules of Civil Procedure because Plaintiff failed to sign it.  [Order, Dkt. 10].  On March 31, 2021, Plaintiff refiled his original complaint with his signature.  [First Am. Compl., Dkt. 12].

On May 20, 2021, Defendants filed a motion to strike and dismiss arguing, *inter alia*, that the amended complaint fails to state a valid claim upon which relief can be granted and must be dismissed in its entirety.  [First Mot. to Dismiss, Dkt. 26].

On October 13, 2021, the Court conducted a pre-scheduled routine discovery status conference with the parties.  [Dkt. 43].  At the status conference, the Court inquired as to the status of discovery at which point defense counsel reported wishing to hold off on discovery until the pending motion to dismiss was adjudicated because the first amended complaint was unclear on what causes of action Plaintiff was raising against Defendants.  The Court suggested that, in the interest of efficiency, Plaintiff be permitted to amend his complaint to expressly alleged the legal basis for his complaint prior to adjudicating the pending motion to dismiss.  The Court then explained to Plaintiff the pleading standard, including the need to allege facts comprising the legal basis for his claims and prayer for relief.  Plaintiff reported he understood.  Neither party objected to proceeding in this manner.

On October 25, 2021, Plaintiff filed his second amended complaint wherein he raised three causes of action: (1) religious discrimination, (2) violation of Connecticut General Statutes § 31-51q, (3) violation of Connecticut General

Statutes §§ 31-51m and 4-61dd.  [Second Am. Compl., Dkt. 44].  As alleged in the second amended complaint, Plaintiff was hired by CT Scoop on May 1, 2019 to work as an ice cream scooper with the intent Plaintiff would become a district manager.  [*Id.* at ¶ 2].  He was enrolled in a management program called "Scoop U" where he would learn how to become a manager.  [*Id.*].  When Plaintiff was hired, it was on agreement that he would not be disturbed or required to work on the Sabbath.  [*Id.*].

Plaintiff claims that during his employment he reported Defendant to OSHA for unsafe work conditions, which could have resulted in a fine of $10,000.  [*Id.* at ¶ 1].  He claims he was thanked by "corporate" for reporting the safety concern.  [*Id.*].

On June 22, 2019, during the Sabbath, Plaintiff received notices on his phone from co-workers communicating in a group chat.  [*Id.* at ¶ 3].  In the group chat, he complained about receiving notifications during the Sabbath.  [*Id.*].  He also questioned how "the product" could be kosher if "they" are working on the Sabbath.  [*Id.*].  Plaintiff asked to speak with the Mashgiach who would have to explain how the products were kosher as labeled.  [*Id.* at ¶ 4].  Plaintiff states that it is customary in the Hebrew law for a Rabbi to bring to the attention of another Rabbi if there is a problem.  [*Id.* at ¶ 5].  Plaintiff claims that "managers" "basically" told him the kosher labeling had nothing to do with being kosher and it had to do with making money.  [*Id.*].  Plaintiff found this to be disrespectful to his beliefs.  [*Id.*].

Plaintiff claims that the day after the June 22, 2019 confrontation, he was removed from the Monday shift.  [*Id.* at ¶ 6].  When Plaintiff returned to work the

following Wednesday, he posted "the whistle-blower law" on the corkboard.  [*Id.*].
Defendant Cherkasova handed Plaintiff two checks and terminated him.  [*Id.*].
Plaintiff objected, pointed to the whistle blower law he placed on the corkboard and
stated Cherkasova could not fire him.  [*Id.*].  Plaintiff alleges Cherkasova then
looked to her attorney, who nodded yes.  [*Id.*].  However, Plaintiff was still
terminated.  [*Id.*].  Plaintiff called the police.  [*Id.*].  Police officers arrived and
assessed the situation after which they concluded it was a civil matter and declined
to make an arrest.  [*Id.*].  One officer handed Plaintiff Attorney Sean Clark's
business card, stating the attorney represented Cherkasova, and advised Plaintiff
to consult him concerning his termination.  [*Id.*].

Plaintiff states he was wrongfully terminated "over a religious matter" and
CT Scoop Shops failed to uphold their bi-laws.  [*Id.* ¶¶ 1, 7].  Plaintiff claims that he
complained that his talents were being exploited.  [*Id.* at ¶ 2].  Plaintiff indicates
prior to his termination he was a good employee in that he arrived early, stayed
late, was given responsibilities early on, and had no marks against him.  [*Id.* at ¶
7].

Defendants filed a renewed Motion to Strike and Motion to Dismiss, which
incorporates the arguments raised in the first Motion to Strike/Dismiss in addition
to raising new arguments in light of Plaintiff's second amended complaint.
[Second Mot. to Dismiss, Dkt. 51].

## II.   MOTION TO STRIKE

Included in Plaintiffs original and first amended complaint was a copy of the
franchise agreement between Ben & Jerry's, Inc. and CT Scoops (the "Franchise

Agreement"). Plaintiff's second amended complaint contains a damages analysis detailing his "actual damages." Defendants have moved to strike the Franchise Agreement and the damages analysis as impertinent and immaterial.

Rule 12(f) of the Federal Rules of Civil Procedure provides that: "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. . . ."

> In deciding whether to strike a Rule 12(f) motion on the ground that the matter is impertinent and immaterial, it is settled that the motion will be denied, unless it can be shown that no evidence in support of the allegation would be admissible. . . . The Federal Rules of Civil Procedure have long departed from the era when lawyers were bedeviled by intricate pleading rules and when lawsuits were won or lost on the pleadings alone. Thus the courts should not tamper with the pleadings unless there is a strong reason for so doing.

*Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976). Thus, "[t]o prevail in such a motion, defendants must demonstrate that (1) no evidence in support of the allegations would be admissible; (2) that the allegations have no bearing on the issues in the case; and (3) that to permit the allegations to stand would result in prejudice to the movant." *Tucker v. Am. Int'l Grp., Inc.*, 936 F. Supp. 2d 1, 16 (D. Conn. 2013). "Inappropriately hyperbolic allegations, ill-conceived attempts at levity, and other similar manifestations of bad judgment in drafting pleadings, by themselves, fall short of the threshold that Rule 12(f) contemplates." *Id.*

Here, Defendants first seek to strike the Franchise Agreement. Plaintiff did not attach this exhibit to the operative second amended complaint. The Court sees no need to strike what is not in issue. It should be noted that Defendants have not sought, or explained the legal basis supporting, sealing of the franchise agreement

**5**

they seek stricken.  Defendants simply argue it should be stricken from the Court's consideration.   Since the Franchise Agreement is not part of the operative complaint, it is not within the Court's consideration on the pending motions.   In addition, Defendants fail to show how they are prejudiced by the inclusion of the Franchise Agreement in the public record. The Court denies Defendants' motion to strike the Franchise Agreement.

Defendants also seek to strike Plaintiff's damages analysis in his Second Amended Complaint because it need not be submitted to the Court, is immaterial to plaintiff's underlying claims ostensibly because the amount sought exceeds the amount of damages allowed by law, rendering them impertinent and/or scandalous. While it is true Plaintiff is not required to submit a damages analysis to the Court and the law limits the damages that may be awarded, the Court is also mindful that Plaintiff is *pro se*.   Defendants state without analysis or explanation that the inclusion of the damages analysis is scandalous.  The Court finds the damages analysis is superfluous at worse.  The Court denies Defendants' motion to strike the damages analysis.

To prevent any conceivable prejudice, the Court would not submit the complaint or any exhibit thereto to the jury, if the case was to proceed to trial.  But, as detailed below, the case will be dismissed.

III.   MOTION TO DISMISS

Defendants move to dismiss Plaintiff's complaint in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

"To survive [a] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Not all allegations in a complaint are entitled to the presumption of truth.  *Id.*  Conclusory allegations that are no more than "legal conclusions" or "[t]hreadbare recitals of elements of a cause of action" are not entitled to the presumption of truth.  *Id.*  If after considering the well-pled factual allegations the court finds that the complaint does not raise a plausible claim for relief, the court should dismiss the case.  *Id.* at 679.  The plausibility standard is more than mere possibility of misconduct.  *Id.*  Further, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Rivera v. Westchester Cty.*, 488 F. Supp. 3d 70, 75–76 (S.D.N.Y. 2020) (citing to *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999)).  The defendant bears the burden of proof on a motion to dismiss for failure to state a claim under Rule 12(b)(6).  *See Sobel v. Prudenti*, 25 F. Supp. 3d 340, 352 (E.D.N.Y. 2014).

"*Pro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).  However, notwithstanding this liberal interpretation, a *pro se* complaint will not survive

7

dismissal unless the factual allegations meet the plausibility standard. *See, e.g., Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

A. <u>Count 1: Religious Discrimination</u>

Count one of Plaintiff's Second Amended Complaint raises a Title VII religious discrimination claim asserting that Defendants discriminated against him for his religious beliefs.  In this section, Plaintiff cites to 42 U.S.C. § 1983, but provides no factual allegations constituting a claim under this statute.  The Court will address all inferential claims Plaintiff may be asserting under this count below.

i. *Section 1983*

Title 42 of the United States Code Section 1983, provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

"In order to establish individual liability under § 1983, a plaintiff must show (a) that the defendant is a "person" acting "under the color of state law," and (b) that the defendant caused the plaintiff to be deprived of a federal right."  *Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004).

"The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"  *West v. Atkins*, 487 U.S. 42, 49 (1988).  *See also Gleason v.*

*Scoppetta*, 566 Fed. Appx. 65, 68 (2d Cir. 2014).  To constitute a state action, "the deprivation must be caused by the exercise of some right or privilege created by the State . . . or by a person for whom the State is responsible," and "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *West*, 487 U.S. at 49.

Only under prescribed circumstances are private citizens and entities subject to section 1983 liability. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999). "A private entity acts under color of state law for purposes of [section] 1983 when '(1) the State compelled the conduct (the 'compulsion test'), (2) there is a sufficiently close nexus between the State and the private conduct (the 'close nexus test' or 'joint action test'), or (3) the private conduct consisted of activity that has traditionally been the exclusive prerogative of the State (the 'public function test').'" *McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014) (citations omitted); *see Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001).

Defendants argue that none of them are state actors for the purpose of section 1983, nor has Plaintiff alleged any state involvement.  Plaintiff argues that the Defendants were acting under color of law because a lawyer was present during his termination, as alleged in the complaint.

Plaintiff's section 1983 claim must fail as Plaintiff has not established that any of the Defendants are state actors for the purpose of section 1983.  As explained above, a state actor is someone acting on behalf of a government body. Assuming there was an attorney present during his termination, this fact alone

does not classify any of the Defendants as state actors.  An attorney is licensed to practice law and represent citizens of the state in which she is a member of the bar. She is subject to the supervision of the courts.  An attorney licensed to practice law is no more a state actor than a driver licensed to drive a car by the state.  Unless the attorney works for a state agency and is acting in her capacity as an attorney for the state, the attorney is not acting on behalf of a government and thus acting under color of law.   A private attorney is not clothed with the authority of state law nor is she acting on behalf of the state.

Plaintiff's section 1983 claim against the Defendants are dismissed.

ii.     *Title VII*

Section 2000e-2(a) of Title 42 of the United States Code provides that:

It shall be an unlawful employment practice for an employer-- (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . .

"The term "religion" includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." § 2000e(j).

A plaintiff may claim violation of the law against religious discrimination under Title VII under the theories of disparate impact, denial of reasonable accommodation, and retaliation.  *See Weber v. City of New York*, 973 F. Supp. 2d 227, 249 (E.D.N.Y. 2013) (citing to *Bind v. City of New York*, No. 08-cv-11105, 2011

WL 454287, at *9 (S.D.N.Y. Sept. 30, 2011)); *Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013).

    a.  **Failure to Accommodate**

"[W]hen an employee has a genuine religious practice that conflicts with a requirement of employment, his or her employer, once notified, must offer the aggrieved employee a reasonable accommodation, unless doing so would cause the employer to suffer an undue hardship."  *Cosme v. Henderson*, 287 F.3d 152, 158 (2d Cir. 2002).  "In formulating such an accommodation, both the employer and employee should remain flexible, with an eye toward achieving a mutually acceptable adjustment."  *Id.*  "[W]hen any reasonable accommodation is provided, the statutory inquiry ends."  *Id.*  To make out a *prima facie* case of religious discrimination, Plaintiff "must show (1) [he] held a bona fide religious belief conflicting with an employment requirement; (2) [he] informed [his] employers of this belief; and (3) [he was] disciplined for failure to comply with the conflicting employment requirement."  *Knight v. Connecticut Dep't of Pub. Health*, 275 F.3d 156, 167 (2d Cir. 2001).

One way Plaintiff's complaint can be interpreted is that he is raising a Title VII religious discrimination case under the theory of denial of reasonable accommodation.  Defendants argue that, to the extent Plaintiff is making such a claim, Plaintiff's complaint fails to sufficiently allege he was terminated for failing to comply with a conflicting employment requirement.  More specifically, Defendants argue that Plaintiff does not claim he was terminated because he asked to not be contacted on the Sabbath or that he objected to receiving messages on

the Sabbath.   Plaintiff does not directly address Defendant's argument in his opposition.   Plaintiff's opposition on the Title VII arguments raised by Defendant is premised on the position that Defendant's were required but failed to provide evidence that Plaintiff's termination was for some reason other than religious discrimination.   Plaintiff also spends this portion of his briefing attempting to justify his position that he should have been allowed to question the mashgiach about food labeling.   In addition, Plaintiff argues summarily that Defendant's briefing, where they claim Plaintiff was only employed as an ice scream scooper, is evidence of religious discrimination.

The Court finds that Plaintiff has failed to sufficiently allege a Title VII violation under a reasonable accommodation theory.   On its face, Plaintiff requested a reasonable accommodation from his employer, that he not be required to work during the Sabbath, and his employers abided by this accommodation. Based on the screen shots of the text messages he complains he received during the Sabbath, these text messages involved a group of employees and Plaintiff was not directed to respond or expected to participate.   Plaintiff could have muted the text message notifications, as directed at the time by one of the members in the group chat.   [First Am. Compl. at Ex. C, p. 6].   Plaintiff was not being asked to work, nor could it be plausibly found that receiving messages in an employee group chat constitutes work where there was no requirement to view or respond.    In other words, receiving group chat notifications during the Sabbath was not a denial of Plaintiff's reasonable accommodation.

In addition, even if Plaintiff had asked not to receive text messages on his Sabbath, that would not have been a reasonable accommodation.  Plaintiff was not expected to read or respond to the text messages and could have muted the text messages. Thus, it was unnecessary to alter the group text recipient list each Saturday to accommodate Plaintiff's religious beliefs.

Further, there is nothing in the complaint to suggest the reason Plaintiff was terminated was because he did not work on the Sabbath.  Thus, he was not disciplined for failing to comply with an employment requirement because no such requirement was made.

Plaintiff's opposition does not refute this issue, rather it tries to put the onus on Defendants to prove his conclusory allegation that he was terminated out of religious discrimination is factually incorrect.  This is a misunderstanding of Plaintiff's pleading requirements and the procedural posture of the case.  Plaintiff has the burden of alleging facts in his complaint that contains sufficient factual matter to state a claim to relief that is plausible.  *Ashcroft*, 556 U.S. at 678. Defendants are permitted to challenge a complaint for failing to meet this requirement and are not required to, or even permitted to, present conflicting factual claims to undermine the allegations in the complaint.  The purpose of the motion to dismiss phase of litigation is to determine if the complaint can survive on its face alone by alleging sufficient facts to constitute the asserted claim.  Where a complaint fails to meet this standard, it must be dismissed.

In addition, Plaintiff's general arguments that Defendants breached their agreement with him or have otherwise acted contrary to an oral or written contract

is not on its own a claim actionable under Title VII.  A breach of contract claim is not necessarily a Title VII claim. Simply because a plaintiff is religious it does not mean every slight, breach, or wrongful conduct is an actionable Title VII claim. Plaintiff is required to causally, as opposed to coincidentally, connect his religious affiliation to the adverse action, which he has failed to do here.

Plaintiff's Title VII religious discrimination claim on the reasonable accommodation theory is dismissed because Plaintiff has not established he was not given a reasonable accommodation and Plaintiff has not established he was disciplined due to his religious affiliation.

### b.    Disparate Treatment

"Title VII disparate treatment religious discrimination claims are assessed using the burden-shifting framework established by *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)."  *Weber v. City of New York*, 973 F. Supp. 2d 227, 250 (E.D.N.Y. 2013); *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004).  The *McDonnell Douglas* standard requires that Plaintiff establish a *prima facie* case of discrimination by showing that (1) he is part of a protected class; (2) that he was qualified for his position; (3) that he suffered an adverse employment action; and (4) that the circumstances surrounding the employment action give rise to an inference of discrimination. *McDonnell Douglas*, 411 U.S. at 802. The Second Circuit has noted that the burden to establish a *prima facie* case is "minimal" or "*de minimis*." *Woodman v. WWOR–TV, Inc.,* 411 F.3d 69, 76 (2d Cir. 2005).  If Plaintiff can establish a *prima facie* case, the burden shifts to the

Defendant to proffer a legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas,* 411 U.S. at 802.

"[T]he inference of discriminatory intent could be drawn in several circumstances including, but not limited to: the employer's continuing, after discharging the plaintiff, to seek applicants from persons of the plaintiff's qualifications to fill that position; or the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 468 (2d Cir. 2001). "[A] plaintiff's own subjective belief that he was discriminated against because of his religion is insufficient to sustain a religious discrimination claim." *Weber v. City of New York*, 973 F. Supp. 2d 227, 254 (E.D.N.Y. 2013).

Neither party addresses this theory of liability under Title VII in their pleadings. To the extent that Plaintiff has not waived this theory of liability, any claim under this theory would fail under the 12(b)(6) standard. As explained above, Plaintiff has not established a nexus between his adverse employment action, his termination, and his religion. Meaning, Plaintiff has not alleged sufficient factual allegations to state a Title VII religious discrimination claim under the disparate treatment theory of liability. Plaintiff's conclusory claim that he was discriminated against on the basis of his religion is insufficient to sustain this claim.

To the extent Plaintiff is raising a disparate treatment claim under Title VII, the Court dismissed such claim because Plaintiff has not sufficiently alleged that

the circumstance surrounding his termination give rise of an inference of discrimination.

### c. Retaliation

Plaintiff's complaint could also be interpreted as raising a retaliation claim as he alleges he was terminated after discussing whether CT Scoop's product was kosher.  "To make out a *prima facie* case of retaliation, a plaintiff must demonstrate that (1) she engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action."  *Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (internal quotation marks omitted).  "An employee's complaint may qualify as protected activity, satisfying the first element of this test, "so long as the employee has a good faith, reasonable belief that the underlying challenged actions of the employer violated the law."  *Id.*  "And not just any law—the plaintiff is 'required to have had a good faith, reasonable belief that [he] was opposing an employment practice made unlawful by Title VII.'"  *Id.*

"[I]in order to constitute a protected activity for purposes of a retaliation claim, the complaint must be related to discrimination on a basis prohibited by Title VII."  *Bennett v. Hofstra Univ.*, 842 F. Supp. 2d 489, 500 (E.D.N.Y. 2012).  "The specific evil at which Title VII was directed was not the eradication of all discrimination by private individuals, undesirable though that is, but the eradication of discrimination by employers against employees."  *Wimmer v. Suffolk Cty. Police Dep't*, 176 F.3d 125, 135 (2d Cir. 1999) (citing to *Silver v. KCA, Inc.*, 586

F.2d 138, 141 (9th Cir. 1978)) (finding that complaint about co-employees making discriminatory comments against non-employees is not a protected activity).

Defendants argue that the complaint falls short of alleging a viable claim for retaliation because Plaintiff did not engage in conduct that is protected under Title VII.  Plaintiff does not respond to this argument.

The Court finds that Plaintiff has failed to sufficiently allege a retaliation claim under Title VII.  Plaintiff's opposition about food labeling is not protected activity under Title VII because it is not related to discrimination on a basis prohibited by Title VII.  *See Bennett*, 842 F. Supp. 2d at 500.  The allegedly mis-labeled food was sold to the public at large. Plaintiff's complaint about the food labeling is by no means discrimination by his employer against employees.  *See Wimmer*, 176 F.3d at 135.

Therefore, the Court dismisses the Title VII discrimination claim as Plaintiff has failed to sufficiently allege that he engaged in protected activity.

In summary, Plaintiff has not sufficiently alleged a Title VII claim against Defendants and thus the first cause of action is dismissed.

**B.  Count 2: Violation of Connecticut General Statutes § 31-51q**

In Count 2, Plaintiff alleges that he brought a matter of public concern by questioning whether selling otherwise kosher ice cream on the Sabbath adulterated the product, rendering it no longer kosher.  He cites to Connecticut General Statutes section 31-51q in raising Count 2 of the complaint.

"Section 31-51q of the Connecticut General Statutes is a cause of action for violation of the right to free speech under both the United States and Connecticut

Constitutions." ***Brown v. Office of State Comptroller***, 211 F. Supp. 3d 455, 477-78

(D. Conn. 2016), *aff'd in part*, *appeal dismissed in part sub nom. Brown v. Halpin*,

885 F.3d 111 (2d Cir. 2018).  Section 31-51q reads, in relevant part,

> Any employer . . . who subjects any employee to discipline or discharge on account of the exercise by such employee of rights guaranteed by the first amendment to the United States Constitution or section 3, 4, or 14 of article first of the Constitution of the state, provided such activity does not substantially or materially interfere with the employee's bona fide job performance or the working relationship between the employee and the employer, shall be liable to such employee . . . .

*Brown*, 211 F. Supp. 3d at 478 (quoting Conn. Gen. Stat. § 31-51q).

> To succeed on a claim under this statute, a plaintiff must demonstrate that:
>
> (1) [he] was exercising rights protected by the First Amendment to the United States Constitution (or an equivalent provision of the Connecticut Constitution); (2) [he] was fired [or otherwise disciplined] on account of [his] exercise of such rights; and (3) [his] exercise of [his] First Amendment rights did not substantially or materially interfere with [his] bona fide job performance or with [his] working relationship with [his] employer.

*Id.* (quoting *Ozols v. Town of Madison*, No. 3:11-cv-1324 (SRU), 2012 WL 3595130,

at *3 (D. Conn. Aug. 20, 2012) (internal citations and quotations omitted)).

"A clear prerequisite" to the statute's application "is that the speech at issue

must be constitutionally protected." *Karagozian v. Luxottica Retail N. Am.*, 147 F.

Supp. 3d 23, 36 (D. Conn. 2015) (citing to *Schumann v. Dianon Sys., Inc.*, 304 Conn.

585, 600 (2012)).  "To be protected by the First Amendment, speech must address

a matter of public concern, and the employee's interest in expressing himself on

this matter must not be outweighed by any injury the speech could cause' to

employee relationships."  *Id.* (citing to *Emerick v. Kuhn*, 52 Conn. App. 724, 743

(1999)).

"[W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Connick v. Myers*, 461 U.S. 138, 147 (1983). This holds true in the private employment context. *Cotto v. United Technologies Corp.*, 251 Conn. 1, 16 (1999). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Id.* at 147–48. In determining whether speech addresses a matter of public concern, "the court should focus on the motive of the speaker and attempt to determine whether the speech was calculated to redress personal grievances or whether it had a broader public purpose." *Lewis v. Cowen*, 165 F.3d 154, 163–64 (2d Cir. 1999).

Even when speech can be viewed loosely as a matter of public concern, the role of the speaker must be taken into consideration. *Win-Nysturp v. Manufacturers Life Ins. Co.,* 8 F. Supp. 2d 157, 160 (D. Conn. 1998). For example, a complaint of sexual harassment in the workplace may be a matter of public concern but if the employee is complaining for purely private interests it is not protected. *Id.*

i.     Individual Defendants

Plaintiff brought all claims against all Defendants, including the two individual defendants Cherkasova and Gorbunov, who, according to the complaint, appear to be owners, managers, supervisors, or agents of CT Scoop. Defendants

argue that § 31-51q only applies to employers and does not contain language establishing liability for individuals. Plaintiff does not directly respond to this argument in his opposition. Courts have consistently held that § 31-51q does not impose individual liability because the plain language of the statute limits its application to "employers." *See Mercer v. Schriro*, 337 F. Supp. 3d 109, 141 (D. Conn. 2018) (collecting cases). Therefore, Plaintiff's § 31-51q claim against the individual defendants is dismissed because the individual defendants are supervisor employees, not an "employer," under the statute.

ii.   **Corporate Defendant**

Next, the Court is to consider whether Plaintiff's complaint contains sufficient factual matter to state a claim to relief that is plausible on its face against CT Scoop. Defendants argue that Plaintiff speech relating to kosher labeling was not speech on a matter of public concern because Plaintiff was simply seeking redress of his grievance internally (that he was contacted on the Sabbath) and not for a broader public purpose. Defendants also argue that nothing in the record suggests Plaintiff sought to inform the public about this. Lastly, Defendants argue that Plaintiff has failed to plead a lack of substantial interference. Plaintiff argues that by not allowing him to observe the Sabbath the Defendants violated § 31-51q. Plaintiff also argues that selling a non-kosher product and claiming it is, is a matter of public concern. Plaintiff lastly argues that Defendants cannot produce evidence to the contrary.

In *Connick*, the Supreme Court found that a government employee's complaints relating to confidence and trust coworkers felt in their supervisors, the

level of office morale, and the need for a grievance committee were not matters of public concern in light of the content, form, and context of the speech.  461 U.S. at 148.  The Court explained that the employee "did not seek to inform the public" of her complaints because they were merely circulated in a questionnaire form to her fellow coworkers.  *Id.*  The Court also explained that the context "convey[s] no information at all other than the fact that a single employee is upset with the status quo."  *Id.*  Because "the focus of [the employee's] questions is not to evaluate performance of the office but rather to gather ammunition for another round of controversy with her superiors" it fell outside the realm of protected speech on a matter of public concern.  *Id.*

This case is similar *Connick*.  Plaintiff's speech centers largely on text messages beginning with the following:

> Hey y'all, Does [a]nyone know how to [s]top the text from this group for the Sabbath? As far as I know, I'm the only one who trys to keep the Sabbath, and the only Rabbi in this group.  If I'm not the only Rabbi in this group can you [p]lease explain to me how Ben & Jerry's is still a "Kosher" product? As I see it, it's a complete DISGRACE according to the Torrah, and "KOSHER" needs to be taken off of the product.  It's extremely frustrating to be [e]mployed by a [c]ompany that says it practice[s] your same religious beliefs by "saying they are Kosher" yet they blow my phone up when I'm worshiping my G-d on the Sabbath.

[Compl. Ex. C p.5].  The content, form, and context of this speech questioning Kosher labeling by Defendant's franchisor company is not speech on a matter of public concern. It is airing of a personal grievance.  Plaintiff's reference to kosher labeling is integrated with and indistinguishable from his redress of personal grievances—that he is being contacted on the Sabbath.  Like the employee in *Connick*, Plaintiff did not seek to inform the public of his complaint. He only raised

it in a text conversation with fellow coworkers which begins and ends with a complaint about receiving a text message on his Sabbath.  Plaintiff was merely venting about receiving text messages on his personal cellphone to which he was not asked to respond and which he could have avoided receiving by muting when he was observing the Sabbath and was exempted from working as an accommodation to his religious beliefs.

Regardless, Plaintiff's complaints themselves are not matters of public concern when reviewed closely.  Plaintiff claims the ice-cream sold by Defendant is not Kosher and is mis-labeled as such because it is sold on the Jewish Sabbath. However, Plaintiff knew that CT Scoops was open and the product was sold on the Jewish Sabbath otherwise he would not have asked to be exempted from working on the Jewish Sabbath.  He therefore could not have had a genuine concern about CT Scoop's product labeling.  Had he a genuine concern he never would have accepted a position with the company and would have made a complaint much sooner.  Both the content and the context of his comments about religion indicate he was speaking on a private employment matter and not a matter of public concern.

Plaintiff has also failed to plead lack of substantial interference.  In *Miller v. Housing Authority of City of New Haven*, No. 3:13-cv-1855(JBA), 2014 WL 2871591 (D. Conn. June 24, 2014), the district court noted "the majority of the [Connecticut] Superior Court decisions and decisions from the United States District Court for the District of Connecticut hold that the plaintiff must plead and prove lack of substantial interference as an essential element under § 31–51q."  *Id.* at *9 (citing

to *King v. The Connection, Inc.*, No. CV106015682S, 2011 WL 3211250, at \*5 (Conn. Super. Ct. June 20, 2011)).

The allegations in *Miller* do not suggest there was a substantial interference with that plaintiff's job performance or working relationship with his employer.  The complaint alleged the employer terminated the employee because he damaged its relationship with a third party.  *Id.*  However, in *Miller* the court found sufficient allegations to satisfy the lack of substantial interference element because the complaint alleged that the employee was given permission to engage in the speech at issue, was encouraged to do so, and the speech was widely praised after publication.  *Id.*

Here, the complaint is not analogous.  There are allegations that Plaintiff was terminated because his conduct interfered with his job performance or working relationship with his employer.  The complaint alleges that Plaintiff was a model employee, was willing to work except on Saturdays, and tried to work only to be stopped by the termination.  However, it also alleges his relationship with his employer became antagonistic after he received the text messages on his Sabbath. After receiving the text messages, Plaintiff became oppositional.  He challenged the accuracy of his employer's product labeling which he had not complained about before.  He also posted the whistle-blower law on the corkboard on the employer's premises, which viewed in the most favorable light, was an apparent attempt to dissuade CT Scoops from reacting to his text message.   Such antagonistic behavior would understandably undermine the communication and mutual trust integral to a productive employer employee relationship. Plaintiff has

not pled his behavior did not interfere with his employment relationship with CT Scoops, an essential element of his claim.

Therefore, the Court dismisses Plaintiff's section 31-51q claim because his speech was not on a matter of public concern and he failed to plead substantial interference.

C. **Count 3: Violation of Connecticut General Statutes §§ 31-51m and 4-61dd**

In Count Three, Plaintiff simply states that he brought safety concerns to OSHA and Defendants knew this, appearing to suggest he was terminated for making the complaint in violation of Connecticut General Statutes sections 31-51m and 4-61dd.

i.     **Section 31-51m**

Section 31-51m provides in relevant part:

(b) No employer shall discharge, discipline or otherwise penalize any employee because (1) the employee, or a person acting on behalf of the employee, reports, verbally or in writing, a violation or a suspected violation of any state or federal law or regulation or any municipal ordinance or regulation to a public body . . . (c) Any employee who is discharged, disciplined or otherwise penalized by his employer in violation of the provisions of subsection (b) may, after exhausting all available administrative remedies, bring a civil action, within ninety days of the date of the final administrative determination or within ninety days of such violation, whichever is later, in the superior court for the judicial district where the violation is alleged to have occurred or where the employer has its principal office, for the reinstatement of his previous job, payment of back wages and reestablishment of employee benefits to which he would have otherwise been entitled if such violation had not occurred.

To establish a prima facie case of retaliation under section 31-51m, Plaintiff must sufficiently allege the following elements: "(1) he engaged in protected activity as defined by section 31–51m, (2) he was subsequently terminated, and (3) there was

a causal connection between his participation in the protected activity and his discharge." *Karagozian v. Luxottica Retail N. Am.*, 147 F. Supp. 3d 23, 32 (D. Conn. 2015) (citing to *Arnone v. Enfield*, 79 Conn. App. 501, 507 (2003), *cert. denied*, 266 Conn. 932 (2003)). In *Mavrelion v. New Haven Board of Ed.*, No. NNHCV166061151, 2018 WL 4054266, at *5 (Conn. Super. Ct. Aug. 3, 2018), the Connecticut Superior Court concluded that a plaintiff raising a claim of retaliation for an OSHA complaint is exhausted through a review process before CONN-OSHA. Other Superior Court decisions have reached this conclusion as well. *See id.* at *4 (collecting cases).

Defendants argue that Plaintiff has failed to exhaust administrative remedies, failed to allege a prima facie case, and the claims against the individual defendants must be dismissed. Plaintiff admits he did not exhaust administrative remedies as to this claim.

Here, Plaintiff has failed to exhaust any administrative remedy before bringing this claim, as he admits, and thus the claim fails. Regardless, Plaintiff has failed to allege sufficient facts to establish a prima facie case under section 31-51m as it relates to the OSHA complaint because he has presented no factual allegations aside from the general statement that he made such a complaint. Plaintiff does not allege when he made the complaint, what complaint he made, facts indicating his employer knew about this complaint, and how the complaint may have impacted his termination.

The section 31-51m claim is dismissed because Plaintiff has not exhausted his administrative remedies and has failed to state a claim upon which relief can be granted.

ii.     **Section 4-61dd**

**Section 4-61dd provides in relevant part:**

**(a) Any person having knowledge of any matter involving (1) corruption, unethical practices, violation of state laws or regulations, mismanagement, gross waster of funds, abuse of authority or danger to the public safety occurring in any state department or agency, any quasi-public agency, as defined in section 1-120, or any Probate Court . . . may transmit all facts and information in such person's possession concerning such matter to the Auditors of Public Accounts.**

**Based on the plain language of the statute, this applies to corruption occurring in a state department or agency, quasi-public agency, or probate court.  CT Scoops is not such a public entity described in the statute and thus this statute does not apply.  The section 4-61dd claim is dismissed.**

IV.     **CONCLUSION**

**For the above reasons, the Court GRANTS Defendants' Motion to Dismiss. As this is Plaintiff's third complaint and the Court has already explained the pleading standard to Plaintiff, the Court finds it would be fruitless to give Plaintiff a third opportunity to amend the complaint.  Consequently, this dismissal is with prejudice. The Court also finds amendment would be futile considering the facts alleged when compared to the factual records.**

**The Clerk is directed to close this case.**

**IT IS SO ORDERED.**

                                            _____/s/_____
                                            **Hon. Vanessa L. Bryant**
                                            **United States District Judge**

**Dated this day in Hartford, Connecticut: March 8, 2022**